## Richmond.

HARRIS' EX'OR v. HARRIS.

March 23d, 1893.

SETTLEMENT—*Evidence—Case at bar.*—In 1884 S. H. had what, in the paper evidencing it, was called a "full and final settlement of all matters" between him and five other parties, of whom L. H. was one, and S. H. paid over to those parties $1,000. In 1887 S. H.'s executor, upon the application of L. H.'s attorney, paid her $539, expressed in her receipt therefor to be "in full of all demands against the estate of S. H." In 1888 L. H. filed her bill against the executor, claiming that in 1880 S. H. had given her his bond for $2,000, which he afterwards got from her for the purpose of investing it, and asking that the executor be required to pay it.

HELD:

Her claim cannot be sustained on the face of her receipt of 1887·

Appeal from decree of circuit court of Albemarle county, rendered in the chancery cause wherein Lizzie W. Harris was complainant and Rhoads Fisher, executor of Samuel Harris, deceased, was defendant. The decree being adverse to defendant, he appealed. Opinion states the case.

*Duke & Duke,* for appellant.

*S. V. Southall,* for appellee.

HINTON, J., delivered the opinion of the court.

After a careful examination of this record we have been forced to the conclusion that the pretension of the appellee cannot be sustained, and that, as a consequence, the decree of

the circuit court of Albemarle county must be reversed. The material facts of the case are as follows :

In the summer of 1886 Samuel Harris, a native of Nelson county, Virginia, who spent part of his time in Texas and a part in Virginia, died, leaving a will, made in Texas, of which it is only necessary to say that it made no provision for the appellee, who was a niece of his, nor any allusion to the bond for $2,000 sought to be set up in this suit. It appears that during one of his numerous visits to Virginia his brother, James M. Harris, bought a farm in Nelson county known as " Oak Hill," and that, being unable to meet the deferred payments, it was re-sold, when Samuel Harris bought it. Before the re-sale, however, James M. Harris had paid some $1,600 or more, and the appellee, Lizzie W. Harris, some $350, on the purchase-price of said land. The relations between Samuel Harris and his brother James and his brother James' daughters, Lizzie and Alice Harris, were at this time extremely cordial, so much so that after the purchase by Samuel Harris all the parties lived together at Oak Hill under some sort of a partnership arrangement. In the fall of 1883, however, a difficulty of some kind having arisen between the parties, Samuel Harris gave notice to his brother and Alice Harris to leave the place. At that time Alice was sick in bed with inflammatory rheumatism, and as soon as Alice was able to leave the house, which seems to have been in the spring of 1884, they left. Lizzie was, during this period, most probably away from Oak Hill, engaged in her vocation of teaching. At the time of their departure there was had, what is called in the paper, " a full and final settlement of *all matters* between William C. Harris, Samuel Harris, Lizzie Harris, M. Alice Harris, and James M. Harris," and, in accordance with the provisions of this settlement, Samuel Harris paid over to the other parties the sum of $1,000.

In the spring of 1887 the appellant went to Texas, and

while there paid to Lizzie W. Harris the sum of $539, the receipt for which reads as follows :

" LONGVIEW, TEXAS, March 4th, 1887.

" Received of Rhoads Fisher, the executor of the last will of Samuel Harris, deceased, the sum of five hundred and thirty-nine dollars ($539), in full of all demands against the estate of Samuel Harris.

(Signed)  " LIZZIE W. HARRIS."

On the 9th February, 1887, C. T. Smith, who has been managing this claim for Lizzie W. Harris, writes to Mr. John W. Harris, as follows :

" Sister Lizzie, being turned out of house and home by the broils of her kin at Oak Hill and Batesville, has appealed to me to look into her affairs, and see if she could collect the money she paid on Oak Hill, as her Uncle Sam had not (as far as she knew or could learn) kept his promise to give her $2,000 to cover her said money (about $500 principal and interest) and about $1,500 that her Pa owned on Oak Hill, at the time her said uncle got a deed for it, Jas. M. Harris having paid the principal debt down to the extent of about $1,500 or $1,600.

" The enclosed paper shows that she will lose all, unless her Uncle Sam has provided for her in some way, or unless those who receive under the will will *at least* pay her the $350 (stated on enclosed paper), and interest from the time she left Oak Hill.

" Please send a copy of his will, and I will remit the cost at once.   He told me and Ro. Whitehead, separately, that he intended to invest the $2,000 in Texas, so it would bring her ten *per cent.* a year, and once said he had attended to it, and it would soon be completed," &c., &c.

On the 17th August, 1888, the appellee filed her bill against the executor of Samuel Harris, claiming that in the year 1880 her said uncle, Samuel Harris, gave her his bond for $2,000, which he afterwards got from her for the purpose of investing it, and asking that the said executors be required to pay it. Now, if the testimony in this record be taken as a whole, we think it perfectly clear that it is utterly insufficient to sustain this claim, not only because it is plainly inconsistent with the relations of the parties after the disagreement which occurred in 1883, when " a full and final settlement of all matters " (so reads the receipt) was had between Samuel Harris and the rest of his brother's family, including the appellee, but it is plainly negatived by the receipt given by the appellee to Harris' executor in March, 1887, at a time when, as it plainly appears from the letter of her brother, C. T. Smith, she must have had in mind all claims or demands which she could possibly have had against her uncle's estate. Indeed, if there was ever a case in which the actions of parties spoke louder than their words, the present is that case ; and this claim, if it ever existed, has been settled and discharged. Nor do we see—unless we impute to the appellee a fraud, which we have not the slightest disposition to do—how we could sustain this claim in the face of the same receipt of March, 1887, when she clearly—indeed, admittedly—received more money than she was entitled to, *unless she received it as a part of this demand.*

But we need not rest the case on this view of it alone ; for, if the deposition of Alice Harris be excluded, as having been taken improperly, it not having been adjourned from day to day, (see *Hunter* v. *Fulcher*, 5 Rand. 130,) and the deposition of Lizzie W. Harris—who was incompetent to testify, because of the incompetency of Page, the executor, the other party to the transaction—be also excluded, the claim is covered by the express words of the last-mentioned receipt, which are

that the sum of $539 is received " in full of all demands against the estate of Samuel Harris."

For these reasons we think the decree of the circuit court must be reversed, and the bill of the complainant must be dismissed.

DECREE REVERSED.